IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL T. WILHITE, JR., et al., § | |
| § | |
| Plaintiffs-counterdefendants, § | |
| § Civil Action No. 3:13-CV-1421-D | |
| VS. § | |
| § | |
| ACELL INVESTORS LIMITED, § | |
| § | |
| Defendant-counterplaintiff. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs-counterdefendants ("counterdefendants") move to dismiss the amended counterclaims of defendant-counterplaintiff Acell Investors Limited ("Acell") under Fed. R. Civ. P. 9(b) and 12(b)(6) and to strike Acell's affirmative defenses under Rule 12(f). Acell has not responded to the motion. For the reasons that follow, the court grants in part and denies in part the motion to dismiss the counterclaims and denies the motion to strike the affirmative defenses.

I

In an October 22, 2013 order, the court granted counterdefendants' motion to dismiss Acell's counterclaims, concluding that counterdefendants had established that the counterclaims did not comply with Rule 9(b) or 12(b)(6). Except as to Acell's declaratory judgment counterclaim, the court granted Acell leave to replead. Acell then filed a second amended answer and counterclaims ("amended counterclaims"). Counterdefendants now move to dismiss the amended counterclaims under Rule 9(b) or Rule 12(b)(6) and to strike

Acell's affirmative defenses under Rule 12(f). Acell has not responded to the motion.

II

The court turns first to Acell's counterclaim for fraud and fraud in the inducement.

A

The facts pertinent to this counterclaim are as follows.[1] Acell is an Irish company formed for the purpose of owning subsidiaries with revolutionary technologies in the fields of composite materials and fire suppression. Around April 2012 plaintiff-counterdefendant Michael T. Wilhite, Jr. ("Wilhite") was appointed Chairman of the Board of Directors of Acell. During a November 2012 board meeting, allegedly as part of an ongoing conspiracy to cause Acell to become indebted and then to use that indebtedness to force a renegotiation of counterdefendants' shareholder control rights, Wilhite announced that Acell was experiencing a severe cash crisis and needed to raise additional capital. He proposed that he and the other counterdefendants loan Acell capital, and, if the funds were not repaid, that the debts be converted into additional stock. Allegedly in reliance on this statement, Acell's Board of Directors approved certain loans from counterdefendants. In November 2012, after Wilhite and counterdefendants had "effectively starved Acell of capital," Wilhite presented the board with a "*fait accompli*." Am. Counterclaims ¶ 109. Acell needed capital, and

---

[1]In deciding counterdefendants' Rule 12(b)(6) motion to dismiss, the court construes Acell's counterclaims in the light most favorable to Acell, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Acell's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Wilhite and counterdefendants were prepared to loan Acell the money. Accordingly, Wilhite had the Board convert the prior approved loans to new terms, ratify various unauthorized loans, and approve new loans on extremely unfavorable terms, including that all of the loans be due in full on December 28, 2012. When Acell was unable to pay its debts as they became due, counterdefendants offered to forgo their loans on the condition that they be given control of the company; when Acell refused, they filed suit and now seek to obtain a judgment followed by foreclosure on Acell's assets.

B

Counterdefendants move to dismiss Acell's fraud counterclaim, contending that it has not been pleaded as Rule 9(b) requires. They maintain that Acell has failed to plead a single specific fraudulent statement or act by counterdefendants Michael D. Thompson, The Williamsburg Corporation, Patrick J. Thompson, or Stephen Jacobs and Stephen Lasher, the co-trustees of the Kenneth L. Schnitzer, Jr. 1989 Gift Trust; that Acell cannot recover against these individuals for the actions of Wilhite and others who are not parties to this lawsuit by making the conclusory allegation that such individuals were counterdefendants' "agents," and that, with respect to Wilhite, the amended counterclaims fail to identify the "who, what, when, and where" to support the fraud and fraudulent inducement counterclaims, as Rule 9(b) requires.

C

The court begins by addressing Acell's fraud allegations against Wilhite.

1

> The elements of common law fraud in Texas are: . . . (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) (citing *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law)).  "Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted).  More colloquially, Acell must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citations omitted).  Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the [counterclaim] showing that the pleader is entitled to

relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (internal quotation marks and citations omitted). "The court's key concern in assessing a [counterclaim] under Rule 9(b) is to determine whether the [counterplaintiff] seeks to redress specific wrongs or whether the [counterplaintiff] instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.).

2

Counterdefendants argue that, as to Wilhite, the amended counterclaims fail, as Rule 9(b) requires, to identify the "who, what, when, and where" to support the fraud and fraudulent inducement counterclaims. The court holds that Acell has pleaded with the requisite specificity at least one ground in support of its fraud counterclaim.

Acell alleges that

> Wilhite, directly representing himself (and, *de jure*, as) the agent for Counterdefendants, stated that the notes sued hereunder would be in a form such that, if they were not paid, the remedy was to convert them into stock in the company. Wilhite made that representation at the November 2012 board meeting. In reality, Wilhite and the counterdefendants never intended to have notes that were mandatorily convertible into stock.

Am. Counterclaims ¶ 121. This allegation sufficiently pleads the "who, what, when, where, and how" of the alleged fraud and thus satisfies the pleading requirements of Rule 9(b). *See Williams*, 417 F.3d at 453. Counterdefendants do not move to dismiss Acell's fraud and fraud in the inducement counterclaim against Wilhite on any basis other than that the allegations fail to satisfy Rule 9(b). Accordingly, because at least one of the fraud

allegations against Wilhite is pleaded with the requisite specificity, the court denies the counterdefendants' motion to dismiss this counterclaim.

D

The court next considers whether Acell has adequately pleaded its counterclaim for fraud and fraud in the inducement against the other counterdefendants.

"When agency is an element of a fraud claim, agency must be pleaded with particularity required under Rule 9(b)." *DT Apartment Grp., LP v. CWCapital, LLC*, 2013 WL 2317061, at *13 (N.D. Tex. May 28, 2013) (Fitzwater, C.J.) (quoting *In re Enron Corp. Sec., Derivative, & "ERISA" Litig.*, 540 F.Supp.2d 759, 782 (S.D. Tex. 2007)) (internal quotation marks omitted). Acell alleges that Wilhite and nonparty Michael Dale ("Dale") acted "as the agents of all Counterdefendants," Am. Counterclaims ¶ 121, but Acell does not otherwise allege a plausible agency relationship between Wilhite and Dale, on the one hand, and the other counterdefendants, on the other.[2] Acell's conclusory allegation that Wilhite and Dale acted as "agents" is insufficient to satisfy the pleading standard of Rule 8, much

---

[2]The amended counterclaims contain other similarly conclusory allegations of agency. *See, e.g.,* Am. Counterclaims ¶ 93 ("counterdefendants appointed [Theodore C.] Skokos and Dale their agents to carry out the plan."); *id.* at ¶ 100 ("Without Dale to act on their behalf, Counterdefendants appointed Wilhite and Kru[e]ger as their agents to continue their scheme against Acell."); *id.* at ¶ 121 ("Wilhite, acting on his behalf and as the agent of the remaining counterdefendants, repeatedly informed Acell that he was committed to raising funds from investors and that short term loans were needed until those funds could be raised."); *id* ("Dale, acting as the agent of Counterdefendants, informed Acell that he would work to increase sales at FireStryker"); *id.* ("Wilhite, directly representing himself (and, *de jure*, as) the agent for Counterdefendants, stated that the notes sued hereunder would be in a form such that, if they were not paid, the remedy was to convert them into stock in the company.").

less Rule 9(b).

Accordingly, the court grants counterdefendants' motion and dismisses Acell's fraud and fraudulent inducement counterclaim against all counterdefendants other than Wilhite.

III

In its amended counterclaims, Acell asserts a new counterclaim for aiding and abetting. Counterdefendants move to dismiss this counterclaim, contending that Acell has failed to plead any factual basis to support an inference that any counterdefendant knowingly participated in the alleged wrongful acts of Wilhite or nonparties Dale, Theodore C. Skokos ("Skokos"), or William Krueger ("Krueger").

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [counterplaintiff's] [amended counterclaims] by accepting all well-pleaded facts as true, viewing them in the light most favorable to [counterplaintiff]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive counterdefendants' motion to dismiss under Rule 12(b)(6), Acell must plead "enough facts to state a [counterclaim] that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A [counterclaim] has facial plausibility when [counterplaintiff] pleads factual content that allows the court to draw the reasonable inference that [counterdefendants] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [counterplaintiff] has alleged—but it has not 'shown'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

B

Although Acell alleges a counterclaim for "aiding and abetting," it appears that Acell intends to plead a counterclaim for aiding and abetting fraud. *See* Am. Counterclaims ¶ 128. Assuming *arguendo* that the Supreme Court of Texas would recognize such a cause of action,[3] the court holds that Acell has not plausibly pleaded this counterclaim. Acell alleges:

> As described above, all of the counterdefendants individually or through their agents assisted, encouraged, participated with, and engaged in a concert of action with various principals (including Skokos, Dale, Krueger, and Wilhite) in committing unlawful and tortious acts designed to harm Acell, including but not limited to participating in the fraudulent inducement of the notes at issue here. Those primary actors did commit tortious actions and the counterdefendants' assistance, encouragement, participation, and concerted action was a substantial factor in causing the tortious action.

---

[3]*See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001) ("Because of our disposition, we do not consider whether Texas law recognizes a cause of action for 'aiding and abetting' fraud separate and apart from a conspiracy claim.").

*Id.* Other than the conclusory allegations that "[t]o effectuate this scheme, counterdefendants appointed Skokos and Dale their agents to carry out the plan," *id.* ¶ 93, and that, "[w]ithout Dale to act on their behalf, Counterdefendants appointed Wilhite and Kru[e]ger as their agents to continue their scheme against Acell," *id.* ¶ 100, Acell fails to plausibly plead any facts that would permit the court to infer that any party or nonparty acted as the agent of any counterdefendant or that any counterdefendants acted in concert to commit tortious acts designed to harm Acell. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Accordingly, the court grants counterdefendants' motion and dismisses Acell's aiding and abetting counterclaim under Rule 12(b)(6).

IV

The court now considers counterdefendants' motion to dismiss Acell's counterclaims for breach of fiduciary duty, negligence, breach of contract, and civil conspiracy. Although in response to the court's October 22, 2013 order Acell has made minor changes to these counterclaims, none of the changes is material. Accordingly, for the reasons stated in the October 22, 2013 order, the court dismisses these counterclaims under Rule 9(b) and 12(b)(6).

V

Counterdefendants move to strike all of Acell's affirmative defenses under Rule 12(f). They argue that each affirmative defense is entirely devoid of any factual support or specificity and plainly does not give them fair notice of the defense.

A

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (citing *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *SEC v. Cuban*, 798 F.Supp.2d 783, 787 (N.D. Tex. 2011) (Fitzwater, C.J.) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)) (internal quotation marks omitted).

This court applies a "fair notice" pleading standard for affirmative defenses, as set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). *See, e.g., Cuban*, 798 F.Supp.2d at 795 n.13. This requires that the party asserting the affirmative defense allege sufficient facts to give fair notice of the nature of the affirmative defense and prevent unfair surprise. *Id.* "Although the court in *Woodfield* noted that in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific analysis' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise." *Mary Kay, Inc. v. Dunlap*, 2012 WL 6625323,

at *5 (N.D. Tex. Dec. 20, 2012) (Fitzwater, C.J.) (citing *Woodfield*, 193 F.3d at 362).

B

In their motion to strike, counterdefendants lump all of Acell's affirmative defenses together and make the global assertion that the defenses, as pleaded, fail to give them fair notice. They have neither explained why each particular affirmative defense fails to give fair notice of the nature of the defense nor have they shown why any particular defense fails to satisfy the fair notice standard. Accordingly, the court in its discretion denies counterdefendants' motion to strike Acell's affirmative defenses under Rule 12(f).

\* \* \*

For the foregoing reasons, the court grants in part and denies in part counterdefendants' motion to dismiss Acell's amended counterclaims and denies counterdefendants' motion to strike.

**SO ORDERED.**

January 23, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE